T.C. Memo. 2014-213

UNITED STATES TAX COURT

WOLE ODUJINRIN a.k.a. OLUWOLE OLUMIDE ODUJINRIN, Petitioner <u>v</u>.
COMMISSIONER OF INTERNAL REVENUE, Respondent

Docket No. 5194-13.                      Filed October 9, 2014.

Wole Odujinrin a.k.a. Oluwole Olumide Odujinrin, pro se.

<u>Cory H. Ellenson</u> and <u>Kathryn A. Meyer</u>, for respondent.

MEMORANDUM FINDINGS OF FACT AND OPINION

LAUBER, <u>Judge</u>:  With respect to petitioner's Federal income tax for 2009,

the Internal Revenue Service (IRS or respondent) determined a deficiency in tax of

[*2] $87,761 and a section 6662(a)[1] accuracy-related penalty of $17,552. After concessions, the issues for decision are: (1) whether petitioner is entitled to deduct for 2009 a claimed net operating loss (NOL) of $24,368 (we hold that he is not); (2) whether petitioner is entitled to deduct business expenses beyond those that respondent has allowed (with certain exceptions, we hold that he is not); and (3) whether petitioner is liable for the accuracy-related penalty (we hold that he is).

## FINDINGS OF FACT

The parties submitted a stipulation of facts at trial. At the close of trial the Court left the record open for 60 days to allow petitioner an opportunity to submit additional documentary evidence substantiating his claimed deductions. On May 6, 2014, the parties timely submitted a partial stipulation of settled issues and a supplemental stipulation of facts. We incorporate the stipulations of facts and the related exhibits by this reference. Petitioner resided in California when he filed his petition.

---

[1]Unless otherwise indicated, all statutory references are to the Internal Revenue Code (Code), as amended and in effect for the taxable year in issue, and all Rule references are to the Tax Court Rules of Practice and Procedure. We round all monetary amounts to the nearest dollar.

[*3] Petitioner is a hematology oncologist. In 2009 he operated a sole proprietorship through a limited liability company named Customized Therapeutics. Petitioner conducted two lines of business: an oncology medical practice and a business whose goal was to research and develop cancer therapies.

Petitioner conducted his oncology medical practice as a locum tenens physician. As such, he was not permanently assigned to any hospital but rather worked for short-term periods with hospitals that had a temporary need for an oncologist with his skills. During 2009 petitioner had temporary affiliations with four hospitals, all of which were distant from his home. Two of the hospitals were in Yakima, Washington; one was in Eureka, California; and the other was in Hastings, Nebraska.

Petitioner spent one or more months in toto at each location, and he traveled home intermittently. Each hospital reimbursed petitioner for travel and housing expenses allocable to his services for it. Each hospital also paid (or reimbursed petitioner for) malpractice insurance covering his services to it. Petitioner offered no credible testimony concerning the extent to which the hospitals reimbursed him for other expenses (such as meals) or the extent to which he incurred expenses in excess of the amounts reimbursed.

**[*4]**   To conduct his cancer research business, petitioner maintained an office in Altadena, California.  This office employed one person, Rakesh Penmetsa.  His activities included soliciting research grants; contracting with the National Institutes of Health (NIH) for investigation of promising cancer therapies; and otherwise managing the development of petitioner's cancer research.

Petitioner timely filed a Federal income tax return for 2009.  On this return he reported income and expenses from both lines of business--his oncology medical practice and his cancer research business--on a single Schedule C, Profit or Loss From Business.  This Schedule C reported gross receipts of $300,605 and total expenses of $269,075.  These expenses consisted of wages of $59,750; rent or lease expense of $15,000; office expense of $9,425; insurance expense (other than health) of $25,000; meals and entertainment expense of $6,775; travel expense of $63,050; interest expense of $4,811; and "other expenses" of $85,264. Petitioner also claimed an NOL carryforward to 2009 of $24,368.

Section 9023 of the Patient Protection and Affordable Care Act (ACA), Pub. L. No. 111-148, 124 Stat. at 877 (2010), provided Federal funding for a "qualifying therapeutic discovery project" (QTDP).  This provision allowed taxpayers to claim a tax credit, codified in section 48D of the Code, or alternatively to apply for a cash grant awarded by the Department of the Treasury

[*5] in lieu of a credit. This credit or grant, which was effective for 2009, was computed as 50% of a taxpayer's "qualified investment" for such taxable year in a qualifying project. See sec. 48D; ACA sec. 9023(e)(1), (4), 124 Stat. at 881, 884. An IRS notice informed taxpayers of the procedures governing application for the credit or grant. See Notice 2010-45, sec. 8.02, 2010-23 I.R.B. 734, 738.

In 2010 petitioner applied for and received a QTDP grant computed by reference to the cancer research expenses he had incurred during 2009. The instructions accompanying this grant instructed him to amend his 2009 tax return to reduce, by the dollar amount of the grant, the cancer research expenses claimed as deductions on that return. Petitioner knew that he was required to amend his 2009 tax return, but he failed to do so.

Following examination of petitioner's 2009 return the IRS sent him a notice of deficiency that denied, for lack of substantiation, all of the business expenses claimed as deductions on his Schedule C, other than the $4,811 deduction for interest. The notice of deficiency also denied, for lack of substantiation, the claimed NOL carryforward. Following trial the parties submitted a partial stipulation of settled issues in which respondent conceded petitioner's entitlement to the following deductions: $53,334 of wages paid to his office employee; $13,199 of rent for his office in Altadena; and $20,000 of "other expenses" comprising two

[*6] royalty payments to NIH.  Petitioner's other claimed deductions, as well as the accuracy-related penalty, remain at issue.

OPINION

## I.  Burden of Proof

The Commissioner's determinations in a notice of deficiency are generally presumed correct, and the taxpayer bears the burden of proving those determinations erroneous.  Rule 142(a); Welch v. Helvering, 290 U.S. 111, 115 (1933).  Petitioner does not contend, and the evidence does not establish, that the burden of proof shifts to respondent under section 7491(a) as to any issue of fact.  Respondent bears the burden of production, but petitioner bears the burden of proof, with respect to the accuracy-related penalty under section 6662.  See sec. 7491(c).

## II.  Net Operating Loss

A taxpayer may generally deduct, as an NOL for a taxable year, an amount equal to the sum of the NOL carryovers and carrybacks to that year.  Sec. 172(a).  A taxpayer claiming an NOL deduction must file with his return "a concise statement setting forth the amount of the * * * [NOL] deduction claimed and all material and pertinent facts relative thereto, including a detailed schedule showing the computation of the * * * [NOL] deduction."  Sec. 1.172-1(c), Income Tax Regs.  Petitioner bears the burden of establishing both the existence of NOLs for

**[\*7]** prior years and the NOL amount that may properly be carried forward to the year in issue. See Rule 142(a); Keith v. Commissioner, 115 T.C. 605, 621 (2000).

Petitioner contended at trial that the NOL was a carryover from 2007 and 2008. However, he introduced no evidence whatever to substantiate the existence or amount of the alleged NOL for either year. Nor did he file the required statement with his 2009 tax return. We accordingly sustain respondent's disallowance of petitioner's claimed $24,368 NOL deduction for lack of substantiation.

III.    Schedule C Expenses

Section 162(a) allows a taxpayer to deduct "all the ordinary and necessary expenses paid or incurred during the taxable year in carrying on any trade or business." A necessary expense is one that is "appropriate and helpful" to the taxpayer's business; ordinary expenses are those that are common or frequent in the type of business in which the taxpayer is engaged. Deputy v. du Pont, 308 U.S. 488, 495 (1940); Welch v. Helvering, 290 U.S. at 113. Personal, living, and family expenses are generally not deductible. Sec. 262.

Deductions are a matter of legislative grace, and the taxpayer bears the burden of proving that claimed expenses are ordinary and necessary. Rule 142(a). The taxpayer also bears the burden of substantiating his claimed deductions by keeping and producing records sufficient to enable the Commissioner to determine

[*8] the correct tax liability. Sec. 6001; sec. 1.6001-1(a), (e), Income Tax Regs.; INDOPCO, Inc. v. Commissioner, 503 U.S. 79, 84 (1992). The failure to keep and present such records counts heavily against a taxpayer's attempted proof. Rogers v. Commissioner, T.C. Memo. 2014-141, at *17.

Section 274(d) imposes more rigorous substantiation requirements for expenses pertaining to travel, business meals or entertainment, and listed property. During 2009 "listed property" included passenger automobiles and cellular phones. Sec. 280F(d)(4)(A).[2] Deductions for these expenses are disallowed unless the taxpayer substantiates by adequate records or by sufficient evidence corroborating his own statement: (1) the amount of the expense; (2) the time and place of the travel, meal, or entertainment, or use of the property; (3) the business purpose of the expense; and (4) in the case of meals and entertainment, the business relationship to the taxpayer of the persons entertained. See sec. 274(d).

There is no doubt that petitioner during 2009 carried on a business and incurred expenses pertaining to it. Petitioner adduced in evidence (among other things) bank account statements, canceled checks, invoices, receipts, and credit

_____

[2] Section 280F(d)(4) was amended by the Creating Small Business Jobs Act of 2010, Pub. L. No. 111-240, sec. 2043(a), 124 Stat. at 2560, which removed cellular phones and similar telecommunications equipment from "listed property." That amendment is effective only for tax years beginning after December 31, 2009. Id. sec. 2043(b).

[*9] card statements to substantiate various claimed business expenses. On the basis of these documents, petitioner's trial testimony, and respondent's concessions, we find that petitioner has substantiated some of his expenses. We summarize our findings in the following paragraphs.

### A. Wages

Petitioner claimed a deduction of $59,750 for wages paid to his employee, Rakesh Penmetsa. Respondent conceded a deduction for $53,334, which is the amount shown on the Form W-2, Wage and Tax Statement, that petitioner issued to Rakesh Penmetsa for 2009; on the Forms 941, Employer's Quarterly Federal Tax Return, that petitioner filed with the IRS for 2009; and on the Forms DE6, Quarterly Wage and Withholding Report, that petitioner filed with the State of California Employment Division for 2009. Petitioner introduced no evidence to account for the $6,416 difference. We find that he has failed to substantiate any wage expense beyond that which respondent has conceded.

### B. Office Rent

Section 162(a)(3) allows a deduction for rent paid for property used in a trade or business. Petitioner claimed a deduction of $15,000 for rent paid for use of his office in Altadena. Respondent has conceded that petitioner is entitled to deduct $13,199 for office rent.

[*10] Petitioner introduced in evidence a letter from his landlord, the Business Technology Center, which states that in 2009 petitioner paid $10,179 for rent, $2,071 for landlord services, and $948 for miscellaneous expenses, totaling $13,198. Allowing for a $1 rounding error, this matches the rent deduction that respondent has conceded. The only evidence that could possibly support an additional rent deduction is a canceled check for $100 payable to the West Hawaii Community Health Center, allegedly for clinic space. Petitioner demonstrated no business purpose for this expense. He has failed to substantiate any rent expense beyond the amount that respondent has conceded.

C.   Office Expenses

Respondent disallowed in toto petitioner's $9,425 of claimed expenses for office supplies and similar items. The only evidence petitioner adduced by way of support consists of bank statements and canceled checks showing payments of $211 to Staples and $111 to the U.S. Postal Service. We will allow a deduction of $322 for office expenses because petitioner demonstrated a business purpose for these expenses.

D.   Insurance Expense

A taxpayer may deduct insurance premiums if the insurance coverage is ordinary and necessary for the taxpayer's trade or business. Sec. 1.162-1(a),

[*11] Income Tax Regs.  Petitioner claimed a $25,000 deduction for insurance (other than health), which respondent denied in full.  At trial petitioner asserted that this expense was attributable to medical malpractice insurance and office insurance.

The evidence established that the hospitals with which petitioner was affiliated paid for (or reimbursed him for) malpractice insurance covering his services to them.  Petitioner introduced no evidence that he had, or was required to have, malpractice insurance in addition to that which the hospitals provided.  Petitioner introduced in evidence a certificate of liability insurance for his office in Altadena.  The document does not indicate the premium cost, and petitioner submitted no other credible evidence of his premium cost for office insurance.  We find that he has failed to substantiate any deductible insurance expense.

E.    Meal and Entertainment Expenses

Petitioner claimed a deduction of $6,775 for meals and entertainment.  These expenses are deductible only if the taxpayer provides the substantiation required by section 274(d).  It is unclear whether petitioner incurred the alleged expenses while working at hospitals away from home or while attending conferences organized by medical associations of which he was a member.  As to the former, petitioner failed to show that his meal expenses were not reimbursed by, or

[*12] did not qualify for reimbursement by, the hospitals. As to the latter, the record is devoid of any evidence showing the amount, time, place, or business purpose of the alleged expenses. We accordingly find that section 274(d) bars any deduction for meal and entertainment expenses.

F.     Travel Expenses

Petitioner claimed a deduction of $63,050 attributable to airplane tickets, hotel charges, car rentals, and taxi fares allegedly incurred while performing his duties as a locum tenens physician and while attending medical conferences. These expenses are subject to the strict substantiation requirements of section 274(d). Petitioner introduced into evidence hotel receipts and credit card statements showing charges for airplane tickets.

While petitioner clearly had to travel to discharge his duties as a locum tenens physician, he admitted that the hospitals with which he was affiliated reimbursed his travel expenses. He introduced no evidence to prove that he incurred travel expenses in excess of the amounts reimbursed. He likewise introduced no evidence to establish what expenses were incurred in connection with medical conferences as opposed to personal travel. We thus sustain respondent's complete disallowance of this deduction for lack of substantiation under section 274.

[*13] G.　　Other Expenses

In part V of his Schedule C petitioner claimed a deduction of $85,264 for "other expenses" as follows:

| | |
|---|---:|
| Accounting tax preparation | $1,600 |
| Conferences | 10,089 |
| Truck auto | 8,500 |
| Insurance truck auto | 2,200 |
| Outside services | 20,000 |
| Payroll expense | 700 |
| Property tax | 6,175 |
| Telephone cell and landline | 19,000 |
| General business expenses | 17,000 |
| Total | 85,264 |

Respondent on audit disallowed all of these expense deductions. After careful review of the record, we conclude that a small portion of the claimed expenses, plus an additional expense that petitioner did not claim on his return but respondent has conceded, are allowable as deductions.

1.　　Accounting and Legal Fees

Petitioner introduced into evidence canceled checks totaling $1,600 payable to Traxler & Associates for preparing Customized Therapeutics' tax returns and to Carl Philips for representing it before the IRS. He also introduced two canceled

**[\*14]** checks totaling $1,404 payable to Gary Torpy for legal services.  We find these documents, coupled with petitioner's testimony, to be credible evidence that he incurred accounting and legal fees of $3,004 during 2009.  We will allow a deduction in that amount.

### 2. Conferences

Petitioner claimed a deduction of $10,089 for expenses of attending conferences.  The only evidence in the record relevant to this issue is a canceled check for $190 for the "Annual Meeting in Orlando" of the American Society for Clinical Oncology dated May 30, 2009.  This check appears to represent the registration fee for a meeting related to petitioner's oncology medical practice and cancer research, which we believe was necessary for his business.  See sec. 1.162-2(d), Income Tax Regs.  We find that petitioner has failed to substantiate the remaining $9,899 in claimed conference expenses.

### 3. Vehicle and Related Insurance Expenses

Petitioner claimed a deduction of $8,500 for "truck/auto" expenses and a deduction of $2,200 for vehicle insurance.  Passenger automobiles are included in the section 280F(d)(4) definition of "listed property," and automobile-related expenses are thus subject to the heightened substantiation requirements under section 247(d).  Sec. 280F(d)(4)(A)(i); see also Fernandez v. Commissioner, T.C.

[*15] Memo. 2011-216. Petitioner introduced no evidence to substantiate his "truck/auto" expenses. While he introduced some canceled checks pertaining to automobile insurance, he offered no evidence to establish what portion (if any) was allocable to business rather then personal use of the vehicles. Because petitioner failed to satisfy the substantiation requirements of section 274(d), we will disallow these deductions in their entirety.

### 4. Outside Services

Petitioner testified that he occasionally paid fees to outside professionals as part of his cancer research business. He documented two payments to David Smith, a statistician, totaling $1,500, and a payment of $350 to Rojelio Nochebuena, a medical professional. Petitioner also introduced evidence of a $4,560 payment to a company named ISI for medical billing services. The latter amount appears to have been an ordinary and necessary expense of his medical oncology business. We will therefore allow a deduction of $6,410 for outside services. Petitioner has failed to substantiate the remaining $13,590 of claimed expenses in this category.

[*16]     5.     Payroll Expenses and Property Tax

Petitioner claimed a deduction of $700 for payroll expenses and $6,175 for property tax. He adduced no evidence to substantiate these claimed deductions. We will accordingly disallow them.

        6.     Telephone Expense

Petitioner claimed a deduction of $19,000 for telephone expenses. For 2009 cellular phones were included in the section 280F definition of "listed property." Sec. 280F(d)(4)(A)(v). Therefore, expenses attributable to cellular phones are subject to the heightened substantiation requirements of section 274(d), which requires a taxpayer to substantiate: (1) the amount of each use or expenditure, (2) the time and place of the use or expenditure, and (3) its business purpose. Sec. 274(d)(4); sec. 1.274-5T(b)(6), Temporary Income Tax Regs., 50 Fed. Reg. 46016 (Nov. 6, 1985).

The bank statements and canceled checks indicate that petitioner incurred charges from multiple telephone carriers. It is impossible to determine from this documentation which expenses are attributable to a cell phone and which to a landline. It is also impossible to determine which expenses related to petitioner's business and which to his personal use. See Vanicek v. Commissioner, 85 T.C.

[*17] 731, 742-743 (1985). We are unable to allow any deduction for telephone expenses.

### 7. Other Business Expenses

Membership fees, such as bar or medical association dues, are deductible if they meet the requirements of section 162. Secs. 1.162-15(c), 1.274-2(a)(2)(iii)(b), Income Tax Regs. Petitioner introduced canceled checks evidencing payments totaling $1,125 to the American College of Physicians, the American Association for Cancer Research, and the Association of Nigerian Physicians in the Americas. He also introduced a canceled check for $512 for the renewal of his physician license with the Maryland Board of Physicians. We believe these expenses were necessary and directly related to his trade or business and will therefore allow a deduction of $1,637 for membership fees.

The evidence demonstrates that petitioner paid $1,070 for preparation of an H1B visa application for Rakesh Penmetsa, an employee of Customized Therapeutics. This visa was necessary to enable Mr. Penmetsa to work in the United States for petitioner's company. The Federal regulations governing employer applications for H1B visas describe the cost of preparing and filing such applications as a business expense of the employer. See 20 C.F.R. sec. 655.731(c)(9)(iii)(C) (2009). These costs are analogous to commissions or finder's fees paid to

[*18] an agent to locate and arrange for the hire of a qualified employee. See

Nelson v. Commissioner, T.C. Memo. 2010-96, 99 T.C.M. (CCH) 1385, 1388

("[C]ompensation for services rendered, such as a bona fide finder's fee or

commission, is generally deductible as an ordinary and necessary business expense

under section 162."). Both types of expenses are incurred by employers in the

ordinary course of business and are necessary to secure certain categories of

qualified workers to serve in the employer's business. Sec. 162(a). We will

therefore allow a deduction for this expense.

Finally, the evidence established that Customized Therapeutics made two

wire transfers to NIH in the aggregate amount of $20,000. Petitioner testified that

these were essentially royalty payments in exchange for Customized Therapeutics'

right to use NIH intellectual property in the course of developing potential cancer

therapies. Although petitioner does not appear to have claimed a deduction for

these payments on his return, respondent has conceded his entitlement to this

deduction. We will accordingly allow a deduction for other business expenses in

an aggregate amount of $22,707.

H.     Reduction for QTDP Grant

In light of the preceding discussion, petitioner has demonstrated that he

incurred $99,166 of deductible business expenses during 2009, in addition to

[*19] interest of $4,811 that the IRS allowed during the audit. However, petitioner received in 2010 a QTDP grant of $68,333 with respect to the 2009 tax year, which was computed by reference to the expenses he incurred in his cancer research business during 2009. His 2009 business expense deductions must be reduced on this account.

Section 9023(e) of the ACA allowed taxpayers to request a grant in lieu of a credit in an amount equal to 50% of an eligible taxpayer's "qualified investment" with respect to a QTDP. Sec. 48D(a); Notice 2010-45, supra. A "qualified investment" was defined as "the aggregate amount of the costs paid or incurred in such taxable year for expenses necessary for and directly related to the conduct of" a QTDP. Sec. 48D(b)(1); ACA sec. 9023(e)(8), 124 Stat. at 882. A QTDP was defined to include projects, such as those in which Customized Therapeutics engaged, that were aimed at developing a product, process, or technology to diagnose, treat, or prevent diseases or afflictions. Sec. 48D(c)(1); ACA sec. 9023(e)(8). No deduction against the Federal income tax was allowed for expenses reimbursed by the grant, Notice 2010-45, secs. 9.03, 9.09, 2010-23 I.R.B. at 739, or "taken into account in determining the credit," sec. 48D(e)(2)(B).

To ensure that no double benefit was received, petitioner was required to amend his 2009 tax return to reduce his claimed 2009 business expense deductions

**[\*20]** to reflect the QTDP grant. The grant letter petitioner received explicitly advised him of this obligation. He neglected to discharge it.

Of the business expenses that we have allowed as deductions, it appears that at least $73,334--$20,000 in royalties paid to NIH plus $53,334 in wages paid to Rakesh Penmetsa, who managed petitioner's cancer research activity--represented "qualified investment" for purposes of ACA section 9023 and was thus reimbursed by the QTDP grant.[3] Petitioner introduced no evidence to the contrary. He is therefore required to reduce his 2009 expense deductions by $68,333, the full dollar amount of that grant.

IV.    Penalties

Section 6662(a) and (b)(1) imposes a 20% accuracy-related penalty upon the portion of any underpayment of tax that is attributable (among other things) to negligence or disregard of rules or regulations. "Negligence" is defined as "any failure to make a reasonable attempt to comply" with the provisions of the Code, and "disregard" means any "careless, reckless, or intentional disregard." Sec. 6662(c). The Commissioner bears the burden of production with respect to a section 6662 penalty. Sec. 7491(c). Once the Commissioner satisfies his burden,

---

[3]It appears that the wages paid to Rakesh Penmetsa are not excluded by section 48D(b)(3)(A) or (D), and, in any event, petitioner has presented no evidence that the wages should be excluded.

**[*21]** the burden shifts to the taxpayer to prove that the penalty does not apply. Higbee v. Commissioner, 116 T.C. 438, 447 (2001). Respondent met his burden of production here by showing that petitioner failed to maintain adequate records to substantiate many of his claimed deductions. The burden of proof thus shifts to petitioner.

The section 6662 penalty does not apply to any portion of an underpayment "if it is shown that there was a reasonable cause for such portion and that the taxpayer acted in good faith with respect to * * * [it]." Sec. 6664(c)(1). The decision whether the taxpayer acted with reasonable cause and in good faith is made on a case-by-case basis, taking into account all pertinent facts and circumstances. Sec. 1.6664-4(b)(1), Income Tax Regs. A taxpayer may be able to demonstrate reasonable cause and good faith by showing reliance on professional advice. See ibid.

Petitioner had little documentation to substantiate many of his claimed deductions, and he offered inadequate evidence to show that he tried to assess his 2009 tax liability correctly. He testified that he used a tax return preparer, but that person did not testify at trial. Petitioner's testimony does not establish a defense of reliance on professional advice. This defense is available only where the taxpayer relies on the advice of a competent tax professional. Sec. 1.6664-4(c)(1),

**[*22]** Income Tax Regs. Petitioner did not establish that his preparer was a competent tax professional; that he made full disclosure to that person of all relevant facts; or that he received tax advice from that person upon which he reasonably relied. We find that petitioner was negligent in preparing his 2009 return and that no portion of his 2009 underpayment met the "reasonable cause" exception. We will accordingly sustain the imposition of the accuracy-related penalty.

To reflect the foregoing,

<u>Decision will be entered under</u>

<u>Rule 155</u>.