# United States Tax Court

T.C. Memo. 2024-95

PATRICIA MARCELLO ANDERSON,
Petitioner

v.

COMMISSIONER OF INTERNAL REVENUE,
Respondent

ANTHONY MARCUS ANDERSON,
Petitioner

v.

COMMISSIONER OF INTERNAL REVENUE,
Respondent

————

Docket Nos. 20178-18, 20179-18.          Filed October 17, 2024.

————

During the years at issue Ps were engaged in numerous business activities. Because R has no record of returns for those years, he prepared substitutes for returns for Ps. The parties have stipulated items of gross income for the years at issue. Ps principally rely on accounting documents (cash disbursements journals and account registers) to substantiate reported business expenses. For a few of those expenses, the record contains bank statements evidencing checks cashed or electronic funds transfers confirming payment. Ps explain the absence of additional evidence of actual payments on the grounds that the boxes containing that evidence were too voluminous to produce or the evidence is tied up in other litigation.

*Held*: Because Ps have not convinced us that evidence of payment that exists is unavailable to them due to circumstances beyond their control, we will not accept

[*2] Ps' journals and registers as evidence of actual payment. *See, e.g.*, *Barrios v. Commissioner*, T.C. Memo. 2023-32, at *5 (treating profit and loss statements without source documents as argument—not evidence).

*Held, further*, because proper record keeping was feasible and, apparently, proper records were maintained, we decline to exercise our authority under the so-called *Cohan* doctrine, *see Vanicek v. Commissioner*, 85 T.C. 731, 742–43 (1985) (citing *Cohan v. Commissioner*, 39 F.2d 540 (2d Cir. 1930)), to estimate Ps' expenditures.

*Held, further*, for similar reasons, deductions for net operating losses are not allowed.

*Held, further*, I.R.C. §§ 6651(a)(1) and (2) and 6654 additions to tax are sustained for Ps' failure to challenge.

––––––––––

Patricia Marcello Anderson, pro se in Docket No. 20178-18.

Anthony Marcus Anderson, pro se in Docket No. 20179-18.

*Zachary B. Friedman* and *Ashleigh R. Wise Friedman*, for respondent.

MEMORANDUM FINDINGS OF FACT AND OPINION

HALPERN, *Judge*: These cases have been consolidated for trial, briefing, and opinion. By separate Notices of Deficiency, each dated July 13, 2018 (Notices), respondent determined deficiencies in, and additions to, federal income tax as follows:[1]

––––––––––

[1] Unless otherwise indicated, statutory references are to the Internal Revenue Code (Code), Title 26 U.S.C., in effect for the years in issue, regulation references are to the Code of Federal Regulations, Title 26 (Treas. Reg.), in effect for the years in issue, and Rule references are to the Tax Court Rules of Practice and Procedure. Dollar amounts have been rounded to the nearest dollar.

[*3] *Patricia M. Anderson*

| Taxable Year | Deficiency | Additions to Tax | | |
| --- | --- | --- | --- | --- |
| | | § 6651(a)(1) | § 6651(a)(2) | § 6654 |
| 2010 | $289,737 | $65,191 | $72,434 | $6,214 |
| 2011 | 106,847 | 24,041 | 26,712 | 2,115 |
| 2012 | 13,025 | 2,931 | 3,256 | 234 |
| 2013 | 22,656 | 5,098 | 5,664 | 407 |
| 2015 | 8,700 | 1,958 | To be computed | 157 |

*Anthony M. Anderson*

| Taxable Year | Deficiency | Additions to Tax | | |
| --- | --- | --- | --- | --- |
| | | § 6651(a)(1) | § 6651(a)(2) | § 6654 |
| 2010 | $335,139 | $75,406 | $83,785 | $7,187 |
| 2011 | 129,622 | 29,165 | 32,406 | 2,566 |
| 2012 | 15,992 | 3,598 | 3,998 | 287 |
| 2013 | 26,237 | 5,903 | 6,559 | 471 |
| 2015 | 15,388 | 3,462 | To be computed | 126 |

The parties have reached agreements and made concessions on several issues. Among respondent's concessions are that petitioners (1) are entitled for all years at issue to the filing status of married filing jointly and (2) are not liable for section 6654 additions to tax for 2010 and 2015.

The issues for decision are whether petitioners (1) have substantiated deductions claimed on various Schedules C, Profit or Loss From Business, and Schedules E, Supplemental Income and Loss,

**[\*4]** (2) have substantiated net operating loss (NOL) carryovers, (3) are liable for additions to tax under section 6651(a)(1) for failure timely to file tax returns, (4) are liable for additions to tax under section 6651(a)(2) for failure to pay the tax shown on a return, and (5) are liable for additions to tax under section 6654 for failure to pay estimated tax. Other issues are computational and need no further discussion.

Petitioners bear the burden of proof. *See* Rule 142(a).[2]

## FINDINGS OF FACT

*Stipulation*

The parties have entered a First Stipulation of Facts, a First Supplemental Stipulation of Facts, and a Second Supplemental Stipulation of Facts. The facts stipulated are found, and the documents stipulated are accepted as authentic.[3]

---

[2] Section 7491(a)(1) provides that, if a taxpayer offers credible evidence with respect to any factual issue relevant to determining his tax liability, the burden of proof with respect to the issue is on the Commissioner. *See also* Rule 142(a)(2). Section 7491(a)(1) applies only if the taxpayer complies with the relevant substantiation requirements in the Code, maintains all required records, and cooperates with the Commissioner with respect to witnesses, information, documents, meetings, and interviews. *See* § 7491(a)(2)(A) and (B). The taxpayer bears the burden of proving compliance with the conditions of section 7491(a)(2)(A) and (B). *See, e.g.*, *Mileham v. Commissioner*, T.C. Memo. 2017-168, at \*30. Petitioners neither propose facts to support their compliance with the conditions of section 7491(a)(2)(A) and (B) nor persuasively argue that respondent bears the burden of proof on any issues because of section 7491(a)(1). We therefore conclude that section 7491(a)(1) does not apply in these cases.

[3] At trial, respondent objected to three exhibits: Exhibit 47-P, "'Flash Report' for the entities Health II of California dba Unified Healthcare and UHCP Incorporated dba MAXCARE;" Exhibit 48-P, "'UHCP Incorporated Cash Receipt journal for the Tax Years 2010 through 2013,' dated June 1, 2016;" and Exhibit 49-P, "correspondence between Sharon E. Witherspoon and Petitioners dated January 20, 2010, March 30, 2010, May 12, 2011, and May 17, 2011." Respondent objected to Exhibits 47-P and 48-P on the grounds of inadmissible hearsay and as summary documents where the originals had not been made available to him. *See* Fed. R. Evid. 802, 1006. Respondent objects to Exhibit 49-P on the grounds of lack of relevance and because it is inadmissible hearsay. *See* Fed. R. Evid. 402, 802. The Court reserved ruling on respondent's objections, requiring him to argue his objection only if, on brief, petitioners referred to the exhibit. Petitioners do not refer to Exhibits 48-P and 49-P, so we need not rule on those exhibits. They did refer to Exhibit 47-P in their Opening Seriatim Brief but make no argument for admission of the exhibit. We sustain respondent's objections to Exhibit 47-P and admit into evidence neither it nor Exhibits 48-P and 49-P.

**[\*5]** *Marital Status, Residence*

Petitioners, a married couple, resided in Arizona when each filed her or his Petition.

*Business Activities*

During the years at issue, petitioners were self-employed, engaged in company management, commercial real estate, and the medical industry. They carried on business through a tiered arrangement of six single-member limited liability companies (LLCs), on top of which was a limited partnership, Vaughn-Leavitt, LP (Vaughn-Leavitt), whose principal member (98% interest) was a revocable trust, AMA Trust I, created by petitioners for their benefit and for the benefit of other family members. The six LLCs are:

- Health II of California, LLC (Health II)

- Health II Equipment and Financing, LLC (Health II Equip.)

- Health II Holdings, LLC (Health II Holdings)

- 8727 E. Via De Commercio, LLC (8727 VDC)

- Claims Management Solutions, LLC (Claims Management)

- 8723 E. Via De Commercio, LLC (8723 VDC)

The LLCs are, for federal income tax purposes, disregarded entities.[4]

---

[4] *See* Treas. Reg. § 301.7701-2(c)(2). Also, Vaughn-Leavitt is for tax purposes a partnership. *See* Treas. Reg. § 301.7701-2(c)(1).

During our consideration of these cases, we asked respondent to answer whether petitioners' tiered business structure terminating in a partnership whose principal member was a trust deprives us of jurisdiction to redetermine deficiencies in petitioners' tax with respect to what might be partnership items or items of a trust (i.e., items of taxpayers other than petitioners). Respondent answered that, although the unified audit and litigation rules enacted by the Tax Equity and Fiscal Responsibility Act of 1982 (TEFRA), Pub. L. No. 97-248, 96 Stat. 324, and in effect before 2018 generally require tax items of partnerships to be determined in entity-level proceedings, *see* § 6221, those rules do not apply in these cases. Assuming Vaughn-Leavitt to be a valid partnership with an independent filing obligation, respondent

**[\*6]** *Accounting Method*

For the years at issue, petitioners' method of accounting was the cash receipts and disbursements method of accounting.

*Income Tax Returns*

Neither petitioner filed an income tax return for any of the years at issue.

Because respondent had no record of returns for those years, he prepared substitutes for returns for each petitioner. The additional income in the Notices is based on a bank deposits analysis. The substitutes for returns include, for each petitioner, computations of his or her tax liability for the years at issue. Except with respect to some differences in the amounts of the section 6651(a)(2) additions to tax calculated for each petitioner (due to the time-sensitive nature of that addition), the deficiencies in tax and additions to tax computed in the substitutes for returns agree with the deficiencies in tax and additions to tax in the Notices.

After they filed the Petitions and in preparation for trial, petitioners submitted to respondent income tax returns, Forms 1040, U.S. Individual Income Tax Return (Returns), for the years at issue, each dated February 11, 2019. Respondent has not processed the Returns.

On all the Returns, petitioners elected the filing status of married filing jointly. On all, they reported "Business income or (loss)" and, for each year, included between two and four Schedules C pertaining to the various LLCs listed above. On the 2010, 2011, and 2012 Returns, they also reported income from "Rental real estate," including, for each year, a Schedule E pertaining to 8723 VDC. They reported no other items of income on any of the Returns.

---

argues, the TEFRA rules do not apply because, as found in the next section of this report, respondent used an indirect method of proof—a bank deposits analysis—to determine petitioners' income. And Treasury Regulation § 301.6231(c)-6(a) provides that partnership items of a partner whose income is determined by an indirect method of proof be treated as nonpartnership items. Moreover, respondent continued, because AMA Trust I is a revocable trust with respect to whose corpus and income petitioners control beneficial enjoyment without the consent of an adverse party, they are treated as owners of the whole of the trust. *See* §§ 671, 674, 676. Respondent's claims with respect to the trust are supported by the record and are not contested by petitioners.

**[*7]**  Reflecting entries on the Returns, the parties have stipulated the following items of gross income for the years at issue.

| Year | Schedule C Gross Receipts | Schedule E Rents Received | Schedule E Merchant Card and Third-Party Payments |
|---|---|---|---|
| 2010 | $1,926,164 | $206,020 | — |
| 2011 | 815,118 | — | $139,878 |
| 2012 | 176,074 | — | — |
| 2013 | 284,988 | — | — |
| 2015 | 113,203 | — | — |

Petitioners variously claimed deductions on the Schedules C and E for expenses incurred for items such as insurance, mortgage interest, legal and professional fees, rent, taxes and licenses, utilities, wages, telephone, computer support services, postage and mail, gasoline and oil, and management fees.

Because petitioners could not satisfactorily substantiate to respondent *any* of the reported Schedule C and E expenses, all of those expenses are at issue here.

Petitioners carried over from 2005 to 2006 an NOL in the amount of $306,554.  On each Return, petitioners claimed an NOL deduction.[5] Because petitioners were unable to satisfactorily substantiate those deductions, respondent disallowed them in total.

---

[5] Petitioners reported NOL carryovers to each of the years at issue as follows.

| 2010 | 2011 | 2012 | 2013 | 2015 |
|---|---|---|---|---|
| $1,655,978 | $1,672,839 | $1,781,159 | $1,778,396 | $1,652,391 |

[*8] *Substantiation—Exhibit 18-J*

To substantiate their reported expenses, petitioners rely principally on Exhibit 18-J, entitled "Anthony and Patricia Anderson Financial Information for the Tax Years 2006 through 2015." As with the Returns, Exhibit 18-J was presented to respondent during trial preparation. The exhibit is 218 pages long and is dated June 1, 2016, and the pages are labeled: "For Tax Purposes Only." Petitioners claim on brief: "This binder of accounting ledgers . . . is the road maps [sic] for this Court to rely on concerning" substantiation of the reported expenses. The exhibit is divided into seven sections, one for each of seven entities. Those entities are:

- AMA Trust I

- 8723 VDC

- Health II

- Health II Holdings

- UHCP Inc. (UHCP)

- Knights III, Inc.

- Vaughn-Leavitt

Each section contains some or all the following self-described documents:

- Summary Statement

- Income Statement

- Operating Expense Supporting Details

- Cash Receipts Journal

- Cash Disbursements Journal

- Account Register

- Analysis of Partners' Capital Account

- Estimated Basis Calculation

**[*9]** Petitioners do not purport that those documents are copies of original accounting records but, rather, "likely the mix up of more than a dozen unsuccessful attempts [to reconstruct each described document] from multiple electronic files emailed to respondent."

The two documents providing the particulars of each entity's alleged expenditures are the Cash Disbursements Journal and the Account Register.

The Cash Disbursements Journal lists expenditures day by day, referencing a date, a check number or account number, payee (e.g., TelePacific Communications), a description ("phone and internet"), and an amount.

The Account Register shows cash disbursements by payee, grouping the year's disbursements to the payee. For example, for UHCP, the following entries describe payments to TelePacific Communications for phone and internet during 2011.

| Date | Reference | Transaction | Description | Amount |
|---|---|---|---|---|
| 3/11/2011 | acct 7451/eft | TelePacific Comms. | phone & internet | $1,468 |
| 3/21/2011 | acct 7451/eft | TelePacific Comms. | phone & internet | 1,452 |
| 5/6/2011 | acct 7451/eft | TelePacific Comms. | phone & internet | 1,401 |
| 5/13/2011 | acct 7451/eft | TelePacific Comms. | phone & internet | 1,500 |
| 8/16/2011 | acct 7451/eft | TelePacific Comms. | phone & internet | 1,496 |
| 10/14/2011 | ck 82682/eft | TelePacific Comms. | phone & internet | 1,440 |
| **Total** | | | | **$8,757** |

[*10] *Additional Substantiation*

The record contains the following Bank of America (BoA) and Arizona Business Bank (ABB) statements.

| Account No. (last 4 digits) | Name on Account | Period of Statements |
|---|---|---|
| BoA Acct. No. 9906 | AMA Trust I | 12/25/09 – 1/25/16 |
| BoA Acct. No. 7448 | 8723 VDC | 4/1/11 – 12/31/15 |
| BoA Acct. No. 7354 | Vaughn-Leavitt | 4/1/11 – 9/30/11 |
| BoA Acct. No. 7451 | Health II dba UHCP | 4/1/11 – 8/31/14 |
| ABB Acct. No. 6768 | AMA Trust I | 5/4/12 – 12/31/15 |
| ABB Acct. No. 6741 | UHCP | 5/4/12 – 12/31/15 |

Other than what indicia of payment by bank check or electronic funds transfer (EFT) can be found in the BoA or the ABB bank statements, the record contains no documentary evidence of payment of any of the reported Schedule C and E expenses, nor does it contain any loan document, contract, or other evidence of an obligation to pay any expense. At trial, in response to the Court's observation that it could not in the record identify such documentary evidence, Mr. Anderson explained that the relevant documents were in "so many boxes" that he "wouldn't be able to bring [them] into th[e] courtroom." Later in the trial he claimed that petitioners' bank statements and records that would substantiate the expenditures recorded in the Cash Disbursements Journal were in storage, and he added: "I have no access to them . . . . [I]t's the subject of another pending legal matter." In the Petitions, petitioners claimed that "at trial" they will offer "sufficient accounting records [to] support the[ir] actual income . . . for the audited years."

*Briefing*

Following the initial round of seriatim briefing in these cases (petitioners went first), it was apparent that, while entries in petitioners' Cash Disbursements Journal and Account Register referencing a specific bank check or EFT might lead to probative evidence that disbursements were made, petitioners had failed to include in those entries the page of a bank statement in evidence

**[\*11]** detailing the disbursement.  Nor on brief did they propose findings directing us to the specific pages of the record.[6]

On our own, we discovered some bank statement entries supporting entries in the Register.  It is not our duty, however, to undertake the laborious task of combing the various bank statements for information to support entries in the Journals and Registers.  To give petitioners a chance to cure their failure to direct us to page references in the bank statements to support Register or Journal entries, we ordered them to file a supplemental brief proposing findings of fact in tabular form identifying those expenses reported on any of the Schedules C or E that are traceable to bank statements in the record and to identify the page in the record of the bank statement entry.  We ordered respondent to file a supplemental answering brief addressing petitioners' proposed findings of fact.  The parties complied.

*Schedule C and E Expenses*

On the basis of supplemental briefing, we list in the following tables expenses to the deduction of which respondent has no objection (together, Table Expenses).

---

[6] At the conclusion of trial, we directed petitioners to Rule 151, which deals with briefing.  We discussed Rule 151(e)(3), which addresses the form and content of briefs and requires that an opening brief contain proposed findings of fact in the form of numbered concise statements of essential fact, each statement supported by reference to the pages of the transcript or the exhibits or to other sources relied on in support of the proposed finding.  Petitioners have failed to comply with Rule 151(e)(3).  In their Opening Brief, as proposed findings of fact, petitioners include only 25 unnumbered statements, nearly all of which consist of what appear to be testimonial statements without any reference to the pages of the transcript or the exhibits or other sources supporting the statements.

Petitioners also ignored the instruction in Rule 151(e)(3) that, in an answering or reply brief, a party "set forth any objections, together with the reasons therefor, to any proposed findings of any other party."  Respondent filed his Seriatim Answering Brief, making 76 proposed findings of fact, and petitioners asked for, and were granted, leave to file their Seriatim Reply Brief.  However, in that discursive brief, they failed to follow the instruction in Rule 151(e)(3) to set forth objections, together with reasons therefor, to respondent's proposed findings of fact.

Because petitioners have failed to provide us with usable findings of fact or to object to respondent's proposed findings, we must conclude that they have conceded respondent's proposed findings of fact as correct except to the extent unsupported by, or inconsistent with, evidence in the record.  *See, e.g.*, *Jonson v. Commissioner*, 118 T.C. 106, 108 n.4 (2002), *aff'd*, 353 F.3d 1181 (10th Cir. 2003).

| [*12] | Table 1—2011 Schedule C—Health II Equip. | |
|---|---|---|
| Line No. | Description | Amount |
| 15 | Insurance (other than health) | $4,466 |
| 16b | Interest: Other | 3,000 |
| 20a | Rent or lease: Vehicles, machinery, and equipment | 30,502 |
| 20b | Rent or lease: Other business property | 20,002 |
| 25 | Utilities | 3,621 |
| 26 | Wages (less employment credits) | 400 |
| 27 | Other expenses: Telephone | 16,730 |
| | Other expenses: Mail and parcel express | 828 |

| Table 2—2011 Schedule C—Health II Holdings | | |
|---|---|---|
| Line No. | Description | Amount |
| 15 | Insurance (other than health) | $14,157 |
| 17 | Legal and professional services | 12,230 |

| Table 3—2011 Schedule C—8727 VDC | | |
|---|---|---|
| Line No. | Description | Amount |
| 17 | Legal and professional services | $2,500 |

13

| [*13] | Table 4—2011 Schedule E—8723 VDC | |
|---|---|---|
| Line No. | Description | Amount |
| 7 | Cleaning and maintenance | $4,725 |
| 9 | Insurance | 3,257 |
| 14 | Repairs | 1,225 |
| 17 | Utilities | 19,995 |
| 18 | Other expenses: Furniture, equipment, office | 4,004 |

| Table 5—2012 Schedule C—Claims Management | | |
|---|---|---|
| Line No. | Description | Amount |
| 10 | Billing services | $8,810 |

| Table 6—2012 Schedule C—Health II Holdings | | |
|---|---|---|
| Line No. | Description | Amount |
| 17 | Legal and professional services | $5,500 |

| Table 7—2012 Schedule C—8727 VDC | | |
|---|---|---|
| Line No. | Description | Amount |
| 17 | Legal and professional services | $5,000 |

| [*14] | Table 8—2012 Schedule C—8723 VDC | |
|---|---|---|
| Line No. | Description | Amount |
| 20a | Rent or lease: Vehicles, machinery, and equipment | $5,400 |
| 21 | Repairs and maintenance | 4,600 |
| 25 | Utilities | 16,754 |
| 27a | Other expenses: Cleaning and maintenance services | 750 |
| | Other expenses: Security monitoring | 50 |
| | Other expenses: Telephone | 661 |

| Table 9—2013 Schedule C—Claims Management | | |
|---|---|---|
| Line No. | Description | Amount |
| 10 | Billing services | $27,068 |

| Table 10—2013 Schedule C—Health II Holdings | | |
|---|---|---|
| Line No. | Description | Amount |
| 17 | Legal and professional services | $7,400 |

[*15]

| | Table 11—2013 Schedule C—8723 VDC | |
|---|---|---|
| Line No. | Description | Amount |
| 17 | Legal and professional services | $7,977 |
| 21 | Repairs and maintenance | 8,735 |
| 25 | Utilities | 20,361 |
| 27a | Other expenses: Telephone | 1,430 |
| | Other expenses: Cleaning and maintenance services | 3,090 |

| | Table 12—2015 Schedule C—Health II Holdings | |
|---|---|---|
| Line No. | Description | Amount |
| 17 | Legal and professional services | $800 |

| | Table 13—2015 Schedule C—8723 VDC | |
|---|---|---|
| Line No. | Description | Amount |
| 20a | Rent or lease: Vehicles, machinery, and equipment | $4,200 |
| 21 | Repairs and maintenance | 8,044 |
| 25 | Utilities | 19,024 |
| 27a | Other expenses: Cleaning and maintenance services | 1,200 |

*Tax Payments*

Neither petitioner has made estimated tax payments for any of the years at issue, nor has either made any tax payment for those years.

**[\*16]**                                OPINION

I.     *Introduction*

During the years at issue, petitioners were engaged in various Schedule C and E business activities.  The parties have stipulated petitioners' gross receipts or gross income from those activities.  After concessions, that leaves at issue whether (1) petitioners are entitled to deduct expenses shown on those schedules, (2) they may deduct NOL carryovers to 2010 through 2013 and to 2015, and (3) they are liable for the additions to tax.

II.    *Schedule C and E Deductions*

A.     *Introduction*

In general, a taxpayer may deduct the expenses of carrying on a trade or business.  *See, e.g.*, § 162(a) (providing a deduction for "all the ordinary and necessary expenses paid or incurred during the taxable year in carrying on any trade or business").

The taxpayer is required to maintain records that are sufficient to enable the Commissioner to determine his correct tax liability.  *See* § 6001; Treas. Reg. § 1.6001-1(a).  The taxpayer bears the burden of substantiating the amount and purpose of a claimed deduction.  *Higbee v. Commissioner*, 116 T.C. 438, 440 (2001).  Part of that burden involves proving "the fact" of any expenditure.  *Anderson v. Commissioner*, T.C. Memo. 2023-42, at \*8–9, *aff'd*, No. 23-9002, 2024 WL 2239160 (10th Cir. May 17, 2024); *see also Barrios v. Commissioner*, T.C. Memo. 2023-32, at \*4.  Treasury Regulation § 1.461-1(a)(1) provides that, under the cash method of accounting, expenses are generally deductible for the year paid.  A taxpayer can carry his burden of proving the fact (payment) of an expenditure by producing canceled checks, invoices, receipts, or credit card statements.  *See, e.g., Odujinrin v. Commissioner*, T.C. Memo. 2014-213, at \*9–10.[7]  A tax return is not evidence of the truth of

---

[7] The Commissioner has provided guidance with respect to account statements that he will accept as proof of payment by a taxpayer for purposes of substantiating federal income tax deductions.  *See* Rev. Proc. 92-71, 1992-2 C.B. 437.  If an amount is paid by check but the bank does not return canceled checks to customers, the expenditure may be proved by a bank statement showing the check number, the amount of the check, the date the bank posted the check, and the name of the payee.  *Id.* § 3.01, 1992-2 C.B. at 438.  Payment by electronic funds transfer may be substantiated by an account statement that shows the amount of the transfer, the date the transfer was posted to the account, and the name of the payee.  *Id.* § 3.02.

**[\*17]** the statements in it. *E.g.*, *Fabian v. Commissioner*, T.C. Memo. 2022-94, at \*42. Nor do statements in briefs constitute evidence, Rule 143(c), and they cannot supplement the record, *Rogers v. Commissioner*, T.C. Memo. 2014-141, at \*15, *amended on reconsideration in part*, 2014 WL 6805465 (Nov. 26, 2014); *see also Patitz v. Commissioner*, T.C. Memo. 2022-99, at \*11.

"When a taxpayer's records have been destroyed or lost due to circumstances beyond his control, he is generally allowed to substantiate his deductions through secondary evidence." *Boyd v. Commissioner*, 122 T.C. 305, 320 (2004); *accord Barrios*, T.C. Memo. 2023-32, at \*5.

And even where the taxpayer has failed to keep records of his deductible expenditures, we have discretion in appropriate circumstances to estimate those expenditures where there is evidence that deductible expenses were incurred. *Cohan v. Commissioner*, 39 F.2d 540, 543–44 (2d Cir. 1930); *Vanicek v. Commissioner*, 85 T.C. 731, 742–43 (1985).[8]

Where the evidence presented at trial is insufficient to support the deductibility of a particular expense, we must sustain the Commissioner's determinations and disallow the deduction. *Rogers*, T.C. Memo. 2014-141, at \*16.

B. *Discussion*

To substantiate their reported Schedule C and E expenses, petitioners primarily rely on the Cash Disbursements Journals and the Account Registers found in Exhibit 18-J for each entity. Those documents detail outlays by date, check number, account number, payee, and the like, but, except with respect to the Table Expenses, petitioners have not directed us to anything in the record evidencing actual payment. Mr. Anderson testified that petitioners have "many boxes" containing substantiating documents. Nevertheless, he was either unwilling ("so many boxes") or unable ("no access . . . . [I]t's the subject of another pending legal matter") to produce the substantiation

---

[8] A court may not invoke the *Cohan* doctrine to estimate the amount of a deductible expense subject to the heightened substantiation requirements in section 274(d). Among the items to which section 274(d) applies are traveling expenses, expenses related to a passenger automobile, and gifts. §§ 274(d)(1), (3), (4), 280F(d)(4)(A).

[*18] to the Court. Mr. Anderson's first excuse describes petitioners' choice on how to present their case, not a circumstance beyond their control. His second excuse lacks particulars that might convince us that the stored records are unavailable because of circumstances beyond petitioners' control. Moreover, petitioners' failure to direct us to evidence supporting claimed expenditures contradicts their representation in the Petitions that, "at trial," they will offer "sufficient . . . records [to] support the[ir] actual income . . . for the audited years."

In other cases where a taxpayer has presented us with accounting documents merely containing lists of categories and amounts of expenses without the introduction of any source documents underlying the figures, we have treated the documents "as argument—not evidence." *Barrios*, T.C. Memo. 2023-32, at *5 (quoting *Rodriguez v. Commissioner*, T.C. Memo. 2009-22, 2009 WL 211430, at *2). We will do the same here.

We are thus faced with a situation where, other than the Table Expenses, the record lacks evidence of the outlays underlying petitioners' Schedule C and E expenses. As noted above, the *Cohan* doctrine allows us to estimate acknowledged expenses that a taxpayer cannot fully substantiate. Petitioners invoke our discretion to make an estimate. Respondent argues we lack discretion because there exists no evidentiary basis upon which to make an estimate. *See Vanicek*, 85 T.C. at 743. Petitioners' specific circumstances, however, give us grounds to decline to rely on *Cohan* to estimate the amounts of their deductible expenses that they failed to substantiate. As the U.S. Court of Appeals for the Second Circuit observed in *Cohan v. Commissioner*, 39 F.2d at 543, not only did the taxpayer in that case fail to keep account of his travel expenses; he "probably could not have done so." "That observation," we have said, "suggests a limit on *Cohan*'s scope, under which estimating unsubstantiated expenses would be inappropriate when proper recordkeeping is feasible and can reasonably be expected." *Joseph v. Commissioner*, T.C. Memo. 2020-65, at *40–41. "In fact," we added, "the Court of Appeals for the Seventh Circuit has recognized just such a limitation, identifying a trend under which *Cohan*, 'while not * * * repudiate[d] * * * entirely, is * * * not invoke[d] * * * where the claimed but unsubstantiated deductions are of a sort for which the taxpayer could have and should have maintained the necessary records.'" *Id.* (quoting *Lerch v. Commissioner*, 877 F.2d 624, 628 (7th Cir. 1989), *aff'g* T.C. Memo. 1987-295).

**[*19]** We take petitioners at their word in the Petitions that they possessed, and would offer at trial, sufficient evidence of their income. Moreover, we are not persuaded by Mr. Anderson's testimony at trial as to why they did not do so. Because petitioners could have and, we now find, *did* maintain records that would substantiate expenses other than the Table Expenses, we will not estimate any of those other expenses. We allow Schedule C and E expenses only to the Table Expenses.

III.    *NOLs*

A taxpayer may generally deduct, as an NOL for a taxable year, an amount equal to the sum of the NOL carryovers and carrybacks to that year. § 172(a). A taxpayer claiming an NOL deduction must file with his return "a concise statement setting forth the amount of the [NOL] deduction claimed and all material and pertinent facts relative thereto, including a detailed schedule showing the computation of the [NOL] deduction." Treas. Reg. § 1.172-1(c). Petitioners bear the burden of establishing both the existence of NOLs for prior years and the NOL amount that may properly be carried forward to the year at issue. *See* Rule 142(a); *Keith v. Commissioner*, 115 T.C. 605, 621 (2000).

Petitioners had an NOL carryover from 2005 of $306,554. On the 2010 return, they claimed an NOL carryover of $1,655,978, which is $1,349,424 more than the $306,554 carryover from 2005. That excess is allegedly composed of NOLs from 2006 through 2009. Those NOLs are, in turn, based on expenses allegedly incurred in petitioners' Schedule C and E activities for 2006 through 2009. Petitioners' alleged NOL carryover to 2015 includes the NOL they claimed in an amended 2014 income tax return.

Other than the Table Expenses reported for 2010 through 2013 and for 2015, petitioners have not provided any of the underlying documents, such as receipts or invoices, showing that the expenses were in fact incurred for 2006 through 2009 and for 2014. Petitioners have not shown that the NOL carryover from 2005 was not used for 2006 through 2009. They have not shown that they had an NOL in 2014.

Although petitioners may have incurred business expenses during 2006 through 2009 and for 2014, there is no evidence supporting the carryovers they claimed from those years, nor do we have any basis to estimate those amounts.

We do not allow any NOL deductions.

**[\*20]** IV.   *Additions to Tax*

Section 6651(a)(1) and (2) provides for separate additions to tax in the event a taxpayer (1) fails to timely file a return and (2) fails to pay tax shown on the return.  Section 6654 provides for an addition to tax in the event a taxpayer underpays a required installment of individual estimated tax.

The Petitions contain no specific assignments of error or supporting facts regarding the additions to tax.  Furthermore, petitioners did not address the additions on brief.  We deem petitioners to have conceded the section 6651(a)(1) and (2) and 6654 additions to tax and hold that respondent has no burden of production under section 7491(c) with respect to them.  *See Funk v. Comm*issioner, 123 T.C. 213, 217–18 (2004); *Swain v. Commissioner,* 118 T.C. 358, 363–65 (2002); *Carlson v. Commissioner*, T.C. Memo. 2012-76, *aff'd*, 604 F. App'x 628 (9th Cir. 2015).

*Decisions will be entered under Rule 155.*